KENNECOTT COPPER CORPORATION,
UTAH COPPER DIVISION,
Appellant,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
UNION NO. 1081, Appellee.

No. 7715.

United States Court of Appeals
Tenth Circuit.

Dec. 18, 1964.

Calvin A. Behle, Salt Lake City, Utah (Keith E. Taylor and Parsons, Behle, Evans & Latimer, Salt Lake City, Utah, on the brief), for appellant.

A. Wally Sandack of Draper, Sandack & Saperstein, Salt Lake City, Utah, for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This action was filed in the District Court for the District of Utah as one arising under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and resulted in a judgment favoring the plaintiff Brotherhood, for the benefit of three named individual members, in the amounts of $525, $650, and $675. The defendant employer, Kennecott, appeals, asserting that the Brotherhood's complaint should have been dismissed as one directed at a controversy

subject to contractual grievance procedures and arbitration and, further, that the amount of the judgment finds no basis in law or fact. The parties concede their dispute to be unique in their bargaining history and one not controlled by exact legal precedent. And, indeed, we find this to be so.

Kennecott operates an open-pit copper mine at Bingham Canyon, Utah. On September 10, 1962, the company placed twenty electrician helpers represented by the Brotherhood on layoff status because of a general reduction in the waste haulage division at the mine. In October of 1962, for the first time, Kennecott began using back hoe equipment for the excavation of anchor holes, dug as preparatory to the installation of braces to electric line poles. Prior to this time the excavating had been done by hand and the work had been awarded to the Brotherhood by a labor agreement. With the institution of the use of mechanical equipment for excavation, Kennecott assigned the work to members of other unions. Deeming Kennecott's action to be violative of the collective bargaining agreement, the Brotherhood on October 28 submitted a written grievance in conformity with the grievance provisions of the labor agreement. Kennecott's answer was delivered to the Brotherhood on November 5 or 6, which was outside the time limit of the grievance procedure outlined in Article 21(B) of the contract, which reads in part:

"The general foreman shall hear the grievance within two (2) days after its submission at his level and shall deliver his answer to the union in writing within three (3) days after such hearing."

Article 21(B) further provides that "if the company's answer * * * is not given within the time limits provided * * * the particular grievance shall be considered forfeited * * *," and on November 20 Kennecott conceded that it had violated the grievance procedure and forfeited the grievance. Kennecott did not, however, concede that its forfeiture of the grievance through technical non-compliance with the time requirements of the contractual grievance procedures carried with it an automatic imposition of the remedy claimed by the Brotherhood. The Company demanded that the disputed remedy be further processed through the procedures contained in the collective bargaining agreement. This the Brotherhood refused to do and turned to the subject action for judicial relief. Kennecott asserts that under these circumstances the continued consideration of the remedy was a condition precedent to the institution of an action under section 301 and that the trial court erred in not dismissing the action.

■ Compulsory submission of industrial disputes to grievance and arbitration machinery is wholly a matter of contract, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409, and consequently the intent of the parties if contained or expressed within the four corners of their collective bargaining agreement is here determinative. Article 21 of that agreement provides in pertinent part:

"Should any difference of opinion, controversy or dispute arise between the parties hereto, such difference of opinion, controversy or dispute shall constitute a grievance.

" * * *

"(B) Grievance Procedure:

" * * *

"Step 2. If the grievance is not satisfactorily adjusted by the immediate supervisor within 48 hours after presentation, the committee shall present it in writing within five (5) days to the General Foreman of the department. The grievance shall be presented on forms provided for that purpose giving (a) the nature of the grievance; (b) the provision(s) of the contract allegedly violated; and (c) the specific remedy requested."

And Article 35:

"1. General Aim

"This Severance Allowance Plan has been developed to provide bene-

fits for those employees who are laid off as a result of a reduction in force caused by technological changes, improved work methods, new operational procedures, or permanent shutdown of a plant, mine, department, or substantial part thereof. Benefits are limited to cases of severance for the reasons stated and will be paid in a single sum.

"* * *

"8. Grievances.

"Any disagreement as to the right of an employee to a severance allowance under this Plan or the amount thereof shall be processed as a grievance under the applicable Labor Agreement."

In complying with Step 2 of the grievance requirements the Brotherhood stated the remedy sought as: "Use of people in the unit to operate the equipment if used in the future and payment of severance allowance to the three oldest electrician helpers of layoff status on basis of new methods."

We have had recent occasion to recognize and impose the compulsion of the policy of section 301 relating to agreements to arbitrate as stated recently in Drake Bakeries, Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474. See Brotherhood of Locomotive Firemen v. Kennecott Copper Corp., 10 Cir., 338 F.2d 224, filed November 20, 1964. That policy, stated broadly, proposes that industrial peace can best be obtained and maintained by giving "full play" to arbitration procedures agreed to by the parties in their collective bargaining agreements. In the case at bar Kennecott asserts that a dispute exists as to the allowable remedy and that full play requires that such dispute be processed through arbitration; the Brotherhood contends that the arbitrable grievance is inseparable as to contract violation and applicable remedy under the collective bargaining agreement and that, upon forfeiture of the grievance, the Brotherhood is home free in both aspects. Under the particulars of this case we think the trial court properly rejected each of the parties' contentions as being an extreme, not in accord with the arbitration procedures contained in the contract, and not in accord with the purposes of section 301.

The Brotherhood has admittedly complied with every specific provision of the contract relating to the submission of grievances to arbitration. The substance of the grievance was the claim of an improper assignment of work and Kennecott, by virtue of the application of a specific contract provision, forfeited its right to contest the claim. In effect, the failure of the company to comply with the time limitations of the arbitration process subjected it to a compulsory default. The issue was not decided on the merits, and by agreement of the parties the arbitration process came to a halt and reached a contemplated end. The contract provides for no processing after forfeiture. To hold, as Kennecott urges, that failure to comply with the specific contractual procedures gives rise to a dispute which in itself is subject either to original or renewed arbitration after forfeiture would do violence to the agreement and would allow an unrestricted splintering of disputes so that the process would potentially be without end. In giving full play to the parties' agreement to arbitrate, those provisions relating to the termination of the process are no less important than provisions relating to the initiation of the process. In the case at bar we hold that the Brotherhood complied with the agreement and was not required to do more.[1]

1. We, of course, do not hold that the parties may not contract for a continuation of the arbitration process under such terms as they agree to; and, most certainly, we do not hold that a contract violation may not be admitted and the remedy be arbitrable. We consider only the particular facts and contract of this case. Neither the contract involved nor the general purposes of arbitration contemplate the fractioning of disputes. See John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; Brotherhood of Teamsters and Auto Truck Drivers, Local 70 v. Consolidated Freightways Corp., 9 Cir., 335 F.2d 642.

346

■ The Brotherhood, although asserting that the company's procedural forfeiture included the remedy sought, specifically negatives that it here seeks the enforcement of an "award" and makes no present claim regarding that portion of the remedy sought relating to the "use of people in the unit to operate the equipment if used in the future * * *." It seems here content with a judgment that would indicate a forfeiture of the remedy for the "payment of severance allowance to the three oldest electrician helpers * * *." The present judgment is not so premised but consists of a money judgment in amount *equivalent* to severance pay as a determination of actual monetary damage flowing as unliquidated damages from a breach of contract. The amount of the judgment finds adequate support in the record from testimony concerning the identity of the crew and the length of time required to perform the disputed work assignment constituting the forfeited grievance.

The judgment is affirmed.