**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL NO. 3683, AFL—CIO, Plaintiff,**

v.

**SOUTH JOHNSON COUNTY VOLUNTEER FIRE & RESCUE, INC., Defendant.**

No. Civ.A. 98–2048–GTV.

United States District Court,
D. Kansas.

June 2, 1998.

James R. Waers, Charles R. Schwartz, Blake & Uhlig, P.A., Kansas City, KS, for Local 3683 Intern. Union of Fire Fighters, Local 3683, AFL–CIO.

Ernest C. Ballweg, Johnston, Ballweg & Tuley, L.C., Overland Park, KS, for South Johnson County Volunteer Fire & Rescue, Inc.

## MEMORANDUM AND ORDER

VAN BEEBER, Chief Judge.

Plaintiff brings this action seeking to compel defendant to arbitrate a dispute arising under the parties' collective bargaining agreement. The case is before the court on the parties' cross-motions for summary judgment (Docs. 7 & 9). For the reasons set forth below, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.

### I. Factual Background

Plaintiff International Association of Fire Fighters Local 3683 ("the union" or "Local 3683") is a labor organization recognized by defendant South Johnson County Volunteer Fire & Rescue, Inc. as the exclusive bargaining agent for a group of defendant's employees. Defendant, a private non-profit corporation organized under Kansas law, provides fire fighting and rescue services to Stillwell, Kansas and surrounding areas pursuant to a contract with Johnson County Fire District No. 2. Plaintiff and defendant entered into a collective bargaining agreement ("CBA") in August 1997.

The parties' CBA contains an Employee Complaint Resolution Procedure for arbitrating grievances arising under the agreement. This procedure applies to all complaints that may arise, including disputes centering around the interpretation of the CBA. (See Def.'s Resp., Ex. 1 at 6). Step five of the Employee Complaint Resolution Procedure sets forth certain time requirements for requesting arbitration before a neutral arbitrator, most notably that any such request must be filed within fifteen days following the decision of the Complaint Resolution Committee. Step five further provides that the arbitrator, although without power to modify the terms of the CBA, has the authority to determine the procedural rules of arbitration.

On October 7, 1997, defendant notified Jerome K. Mitzner, an acting lieutenant in its department who simultaneously served as president of the union, that he was being suspended for three days based on an alleged act of insubordination. Two days later, defendant informed Mitzner that his three-day

suspension had been elevated to an indefinite suspension pending an investigation. On October 13, 1997, Mitzner notified defendant that plaintiff had appointed a union representative and legal counsel to represent him in all matters arising out of the suspension.

On October 15, 1997, Mitzner filed a formal complaint with defendant contesting his suspension. That same day, defendant informed Mitzner that his "discharge hearing" would be held on October 23, 1997 pursuant to the terms of the CBA. At the October 23 discharge hearing, defendant formally terminated Mitzner. On October 28, 1997, James R. "Dick" Waers, Mitzner's attorney at the law firm of Blake & Uhlig, P.A., wrote to defendant and indicated that the firm represented "IAFF Local 64 and Jerome Mitzner concerning his discharge from employment." Waers also informed defendant that Mitzner desired to waive all steps of the CBA grievance procedure and proceed directly to arbitration.

On November 4, 1997, defendant's lawyer dispatched a letter to Mitzner's attorney remarking that Local 64 had no standing to intervene in the dispute between defendant and Mitzner. After issuing a response reiterating Local 64's role in the dispute the next day, Waers wrote to defendant's counsel on November 11, 1997 and noted that he had cited the wrong local union number in his previous correspondence. Waers clarified that Local 3683—not Local 64—was Mitzner's bargaining agent. Waers then asked defendant to make the necessary correction on the arbitration request and forward the information to the Federal Mediation and Conciliation Service ("FMCS").

On November 17, 1997, defendant's attorney wrote Waers and expressed that defendant deemed Mitzner's grievance abandoned inasmuch as the time for requesting arbitration had expired. Over the next two months, Waers sent several additional letters to defendant asserting that the union had not waived any right to arbitration and that the law requires procedural defenses such as those raised by defendant to be resolved in arbitration. Defendant, however, refused to arbitrate Mitzner's grievance and has maintained the same position up to the present time.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

### A. Jurisdiction

██ Before reaching the merits of this dispute, the court must determine whether it has jurisdiction over defendant. Although defendant does not raise any jurisdictional defects, it refuses to admit the existence of subject matter jurisdiction. Pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), the court may exercise jurisdiction over "[s]uits for violation of contracts between an employer and a labor

organization representing employees in an industry affecting commerce." The Act defines the phrase "industry affecting commerce" as "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce." 29 U.S.C. § 142(1); *see also* 29 U.S.C. § 152(7).

■ The Supreme Court has held that Congress intended the term "affecting commerce" to vest the National Labor Relations Board and, by natural extension, the federal judiciary with "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause." *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963). Thus, the court may entertain a labor dispute "whenever an employer has more than a de minimis impact on the flow of interstate commerce." *YMCA of the Pikes Peak Region, Inc. v. NLRB*, 914 F.2d 1442, 1447–48 (10th Cir.1990) (citation omitted). The undisputed facts show that the annual agreement between defendant and Johnson County exceeds $50,000. The record also reflects that more than $50,000 of Johnson County's 1995 budget went to the purchase of goods and services from outside the state of Kansas. On these facts, the National Labor Relations Board determined that it had jurisdiction over defendant, (*see* Pl.'s Mot. for Summ.J., Ex. D at 2 n. 2), a decision to which this court must accord deference. *See NLRB v. Peninsula Gen. Hosp. Med. Ctr.*, 36 F.3d 1262, 1269 (4th Cir.1994).

Other than a cursory remark that jurisdiction is a legal question, defendant articulates no reason why this case falls outside the court's jurisdiction. The fact that defendant performs its services exclusively in Kansas is not dispositive. "The incidence of the Labor Management Relations Act is not restricted to interstate transactions." *NLRB v. Conover Motor Co.*, 192 F.2d 779, 781 (10th Cir.1951). Under the broad jurisdictional mandate set forth in *Reliance Fuel*, the court finds that defendant's operations have a sufficient nexus to interstate commerce to trigger the court's jurisdiction.

*B. Merits*

Turning to the merits, plaintiff insists that defendant has a contractual obligation to submit Mitzner's grievance to arbitration under the terms of the parties' CBA. Defendant responds that any right to have Mitzner's dispute arbitrated was abandoned after plaintiff neglected to submit either a timely notice of intent to arbitrate or a properly completed FMCS form.

The Supreme Court, in a series of cases known as the *Steelworkers Trilogy*, articulated the standards for determining the arbitrability of labor disputes. *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Those general principles, which the Court reaffirmed in *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), are:

(1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to submit;

(2) the question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is an issue for judicial determination;

(3) in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court must not rule on the potential merits of the underlying claims; and

(4) if a contract contains an arbitration clause, there is a "presumption of arbitrability" such that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Id.* at 648–50, 106 S.Ct. 1415 (citations omitted).

■ Although it does not seriously dispute that the substantive allegations in Mitzner's grievance fall within the ambit of the CBA's mandatory arbitration provision, defendant maintains that Mitzner is precluded from pursuing arbitration because plaintiff, as Mitzner's official bargaining agent, failed to follow certain CBA time and filing requirements. Specifically, defendant asserts that the October 28, 1997 arbitration request it received from Mitzner's attorney had no binding effect inasmuch as it was submitted not by Mitzner's own union—Local 3683—but by Local 64. Defendant contends that Local 3683 did not submit its notice of intent to arbitrate until four days after the CBA's fifteen-day time limit had expired. Defendant also avers that plaintiff never submitted a properly completed FMCS form on Mitzner's behalf. According to defendant, plaintiff's failure to comply with these "conditions precedent" vitiates any right to compel arbitration.

Defendant's resistance to plaintiff's arbitration request is misdirected. Although defendant's arguments ultimately may bar Mitzner from securing any arbitration recovery, the Supreme Court held in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), that such issues lie within the exclusive province of the arbitrator. In *Livingston,* the union filed a lawsuit to compel an employer to arbitrate a dispute pursuant to a CBA. The employer contended, *inter alia,* that the union had inexcusably failed to comply with pre-arbitration filing requirements and time limitations set forth in the agreement. *Id.* at 556–57 & n. 11, 84 S.Ct. 909. The Court refused to entertain the employer's defenses and held that "[o]nce it is determined that ... the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* at 557, 84 S.Ct. 909.

The Court cautioned in *Livingston* against attempting to break down alleged CBA violations into "substantive" and "procedural" components. *Id.* at 556–57, 84 S.Ct. 909. The Court noted that such issues frequently are intertwined and need not be carved up among alternative forums based on some amorphous dichotomy. *Id.* at 557, 84 S.Ct. 909. The Tenth Circuit, however, has endeavored to articulate a distinction between the two arbitrability questions. In *Denhardt v. Trailways, Inc.,* the circuit held that "substantive arbitrability" focuses on whether "parties have contractually agreed to submit a particular dispute to arbitration." 767 F.2d 687, 690 (10th Cir.1985). Conversely, "procedural arbitrability" examines "whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate." *Id.* (quoting *Livingston,* 376 U.S. at 557, 84 S.Ct. 909).

Defendant argues that the CBA's time and form restrictions are substantive in nature and evince an intent to prohibit certain complainants from pursuing their grievances in arbitration. The court disagrees. Such a theory would equate substantive defenses with procedural defenses, thereby undermining the heavy presumption of arbitrability that the Supreme Court mandated in the *Steelworkers Trilogy* and its progeny. The Tenth Circuit, in fact, has rejected the virtually identical contention on two separate occasions. *See Denhardt,* 767 F.2d at 689–90 (dispute over timeliness of arbitration request must be resolved by arbitrator); *United Auto., Aerospace & Agric. Implement Workers of Am. v. Folding Carrier Corp.,* 422 F.2d 47, 49 (10th Cir.1970) (same).

In support of its position, defendant relies primarily on *Kennecott Copper Corp. v. International Bhd. of Elec. Workers, Local Union No. 1081,* 339 F.2d 343 (10th Cir. 1964).[1] In that case, a union filed an official grievance after its members' employer be-

---

1. Defendant also references *Application of Mark Cross Co.,* 15 Misc.2d 947, 181 N.Y.S.2d 110 (1958), a New York state trial court decision depriving an employee of his right to arbitration based on his union's failure to submit a timely arbitration application. This case no longer has precedential value as it has been implicitly overruled by the United States Supreme Court's holdings in the *Steelworkers Trilogy* and *Livingston.*

gan assigning particular work tasks to employees of other unions. The employer neglected to respond to the grievance within the requisite time period and conceded that, under the terms of the parties' CBA, its dilatory response forfeited its right to arbitrate the *merits* of the dispute. *Id.* at 344. The employer demanded, however, that the *remedy* for its contractual violation be resolved through arbitration. *Id.* The trial court rejected this request and proceeded to award monetary damages to various union members. *Id.* at 343. The Tenth Circuit affirmed on appeal, holding that the CBA contained no provision for arbitration of remedies after a procedural forfeiture on the underlying merits of the dispute. *Id.* at 345. To hold otherwise, the circuit noted, "would allow an unrestricted splintering of disputes so that the process would potentially be without end." *Id.*

*Kennecott Copper* is distinguishable from the case at bar. The employer expressly acknowledged in *Kennecott Copper* that its lack of a timely response to the union's grievance amounted to a procedural default and that the default eliminated its right to arbitrate the merits of the grievance.[2] The court, therefore, never confronted the issue whether a party may arbitrate the validity of a grievance after failing to adhere to certain procedural prerequisites. The court dealt only with the arbitrability of remedies separate and apart from underlying grievances and held that parties may not "splinter" their disputes. No such concessions are present here. To the contrary, plaintiff denies that it has committed any procedural default or otherwise forfeited its right to pursue Mitzner's grievance in arbitration. Neither does plaintiff seek to divide the dispute between the underlying merits and possible remedies. In sum, the objections that defendant raises to plaintiff's arbitration request are precisely the type of procedural issues that the Supreme Court has held must be resolved by an arbitrator.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for summary judgment (Doc. 7) is granted and defendant's motion for summary judgment (Doc. 9) is denied.

IT IS FURTHER ORDERED that defendant submit the grievance of Jerome Mitzner to arbitration pursuant to the terms of the parties' collective bargaining agreement.

**IT IS SO ORDERED.**

2. Plaintiff notes that although the Supreme Court issued its *Livingston* opinion, which held that procedural default issues must be left to the arbitrator, approximately eight months before the Tenth Circuit handed down *Kennecott Copper,* the employer in *Kennecott Copper* had conceded its procedural default and concomitant arbitration forfeiture prior to the issuance of the *Livingston* decision.