TODD HABERMANN CONSTRUCTION, INC., a Colorado corporation, Plaintiff,

v.

David A. EPSTEIN, Susan K. Gordy, Long Island Savings Bank, FSB, and Lasalle Bank, FSB, Defendants.

No. Civ.A.98–K–1619.

United States District Court, D. Colorado.

Nov. 2, 1999.

Thomas J. Todd, Harry Shulman, Holland & Hart, LLP, Aspen, CO, for plaintiff.

R. Gregory Stutz, John Michael Martin, Stutz, Miller & Urtz, LLC, Denver, CO, for defendants.

ORDER ON MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS LASALLE BANK, FSB AND LONG ISLAND SAVINGS BANK, FSB; ORDER ON RECOMMENDATION ON PLAINTIFF'S AMENDED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

KANE, Senior District Judge.

Plaintiff Todd Habermann Construction, Inc. (THC) commenced this action in Pitkin County District Court against Defendants David A. Epstein, Susan K. Gordy, Long Island Savings Bank, FSB, Lasalle Bank, FSB, Warren L. Palmer, and The Public Trustee of Pitkin County, Colorado. Epstein and Gordy promptly removed it to this court on July 24, 1998, based upon diversity of citizenship.

Before me is Magistrate Judge Michael Watanabe's April 26, 1999 Recommendation on Plaintiff's Amended Motion to Compel Arbitration and Stay Proceedings. The recommendation was made pursuant to an Order of Reference issued by Judge Walker D. Miller, and a later Minute Order entered by Magistrate Judge O. Edward Schlatter transferring this case to the Magistrate Judge Watanabe. On May 17, 1999, Defendants filed objections to the recommendation, to which Plaintiff responded on May 25, 1999. No further judicial action in this matter occurred until October 1, 1999, when Judge Walker Miller entered an Order of Recusal and this case was reassigned to me. I adopt the recommendation and grant the Amended Motion to Compel Arbitration and Stay Proceedings.

THC filed a Stipulation for Dismissal of Defendant The Public Trustee of Pitkin County, Colorado on September 2, 1999, dismissing the claims against the Public Trustee with prejudice pursuant to Fed. R.Civ.P.Rule 41(a)(1). On September 20, 1999, THC filed a Notice of Dismissal of Defendant Warren L. Palmer in accordance with Fed.R.Civ.P. 41(a)(1)(ii), dismissing the claims against Palmer without prejudice. On September 2, 1999, THC filed a Motion for Default Judgment against Defendants Lasalle Bank, FSB and Long Island Savings Bank, FSB. The Clerk has noted default of each of these Defendants and I enter default judgment against them.

## I. *BACKGROUND.*[1]

Epstein, an attorney and state Court of Claims Judge, and Gordy, also an attorney, reside in Chicago, Illinois, and own a second home in Aspen, Colorado. They retained an architect, Warren Palmer, to provide professional architectural services for a remodel of and an addition to their Aspen residence. One of Palmer's duties as architect was to act as an owner's agent in securing a contractor and negotiating a contract. (Palmer Dep. at 8, 10.) Palmer sent out his standard bid package, which he had prepared, to four proposed contractors, including THC.

That package included an "INFORMATION FOR BIDDERS" sheet, a "PROPOSAL INFORMATION" sheet, a proposal form which was to be completed by each bidder, a list of specifications, and the plans and specifications for the project based upon the drawings Palmer had prepared. The first section of the "SPECIFICATIONS" document was entitled 'DIVISION 'O' CONDITIONS OF THE CONTRACT." Significantly, the first subsection thereof provided: "THE AMERICAN INSTITUTE OF ARCHITECTS DOCUMENT A201, 'GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION', 1987 EDITION, IS HEREBY MADE A PART OF THESE CONDITIONS OF THE CONTRACT, EXCEPT AS SUPERSEDED, AMENDED OR SUPPLEMENTED

---

1. This section largely repeats the magistrate judge's clear account of the background facts, as supported by the record.

HEREIN...." The "General Conditions" document referenced therein contains an arbitration provision.[2]

The "Proposal" form which was to be completed by each bidder included the following provision: "IF THE UNDER-SIGNED BE [sic] NOTIFIED OF PROPOSAL ACCEPTANCE WITHIN 10 DAYS AFTER THE ABOVE DATE OF BID, HE AGREES TO EXECUTE THE CONTRACT FOR THE ABOVE WORK FOR THE ABOVE STATED COMPENSATION, IN [sic] FORM OF THE AIA STANDARD OWNER – CONTRACTOR AGREEMENT...." Notably, that AIA Standard Owner–Contractor Agreement expressly incorporates the A201 General Conditions.

THC submitted a bid, dated April 11, 1996, which proposed to furnish all labor, materials, and fixtures for $447,309.17. Palmer states in an affidavit that Epstein and Gordy accepted THC's proposal, and he notified THC of their acceptance within ten days of receiving the proposal. (Palmer Aff. at ¶ 5.) Epstein testified demolition started the day after Memorial Day weekend. (Epstein Dep. at 12.)

Palmer forwarded two copies of the proposal to Epstein and Gordy on June 7, 1996, (Palmer Dep. at 12), but he did not discuss the content of the contract with them, (Id. at 17). Palmer has no recollection of discussing anything about arbitration with Epstein, and neither Epstein nor Gordy instructed him to strike the arbitration language. (Id. at 11–12, 15.)

Three addenda were produced which either clarified, added to, or subtracted from the scope of the project. (Palmer Dep. at 22.) The first was dated April 4, 1996, and sent with the bid, the next was dated April 29, 1996, and the last was dated May 17, 1999. (Arnold Dep. at 8–9.) Due to these changes and unanticipated conditions, Epstein and Gordy claim they agreed to increase the contract amount to a fixed sum of $630,000.00. (Answer to Complaint & Counterclaims at 6, ¶ 9.) They further assert that there were subsequent minor changes that slightly increased costs further. (Id. ¶ 10.) Through payment of monthly invoices, they paid THC approximately $730,000.00 through December 18, 1997. (Id. at ¶ 11.) THC claims the total amount due was $831,360.14, and, therefore, Epstein and Gordy owe $106,743.37. (Compl. at ¶ 15.) THC has perfected a mechanic's lien on the home and seeks to foreclose on that lien. Epstein and Gordy, however, contend that they are entitled to a refund of approximately $100,000 and have counterclaimed.

It is undisputed that a written contract was never signed. Todd Habermann, principal stock holder of THC, claims he continued to ask his site manager, Alan Arnold, to have the contract signed. (Habermann Dep. at 8.) Arnold states he asked Epstein and Gordy personally and in letters if they would sign and return the contract. (Arnold Dep. at 17; Ex. G to Original Motion to Compel Arbitration.) According to Arnold, Epstein repeatedly assured him that he would sign the contract, and at no time did he ever object to any of the terms of the standard agreement, including the arbitration provision. (Arnold Aff. at ¶¶ 2–3.) Habermann also

---

2. The provision provides:

**4.5 ARBITRATION**

**4.5.1 Controversies and Claims Subject to Arbitration.** Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5. Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered.

contends he had a telephone conversation with Epstein about proceeding without a contract because Habermann was uncomfortable that a contract had not been signed. (Habermann Dep. at 9.) The "gist" of Epstein's response was that the contract would be returned soon (*Id.*), but it was never returned.

Epstein does not recall reviewing an AIA contract until well after construction had started. (Epstein Dep. at 13, 14.) He claims the arbitration clause stood out like a red flag, and he called Habermann. (*Id.* at 14.) Epstein allegedly stated during that call, "Tell me what parts of this deal you would like to have subject to arbitration and maybe I can taylor [sic] a narrower clause because certainly there are certain things we could get some accountants to agree if it's a billing matter. There might be something I can agree to." (*Id.* at 15.) Epstein claims Habermann replied that "he didn't really care very much about the arbitration and if that's what the concern was then don't worry about it and we will do something else." (*Id.* at 16.) Epstein, however, never completed drafting this purported amendment, stating that he "abandoned the amendment and I did so because I had a conversation, more than one, with Todd Habermann and told him I didn't think it was worth the trouble to go through and try and resolve a written agreement." (*Id.* at 16.)

## II. *REVIEW OF RECOMMENDATION ON PLAINTIFF'S AMENDED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS.*

Magistrate Judge Watanabe recommended that Plaintiff's Amended Motion to Compel Arbitration and stay proceedings be granted. Defendants assert the recommendation is contrary to applicable law, in opposition to the facts of record, and based on disputed questions of material fact on which the magistrate judge reached conclusions without a hearing. They also raise specific objections. I am required under the standard of review set forth in Fed.R.Civ.P. 72(b) to make a de novo determination of those portions of the Magistrate's proposed findings or recommendations to which objection is made.

Magistrate Judge Watanabe found the course of conduct of the parties established an agreement on the AIA contract, including the arbitration provision; a written arbitration agreement does not have to be signed to be enforceable; THC had not waived its rights to demand arbitration; and the issue of whether THC had failed to comply with the contractual conditions precedent to the right to arbitration should be decided by the arbitrator. Defendants, Epstein and Gordy object to each of these findings.

A. *The course of conduct of the parties established an agreement on the AIA contract, including the arbitration provision.*

Epstein and Gordy challenge this finding on various grounds. They assert there is no evidence that the architect, Warren Palmer, had authority to bind them to a contract and that the formation of the contract and terms of such contract are disputed issues of material fact.

Palmer, acting on behalf of Epstein and with his authority, (Palmer Dep. At 10–11), sent a solicitation to bid to THC. The authorized solicitation required that the bid be made on the basis of certain general conditions (including an arbitration provision) and that the contractor whose bid was accepted agree to enter into an AIA contract (which also included an arbitration provision). (Am.Mot. to Compel Arbitration, Aff. Palmer ¶¶ 3, 4 and Ex. E.)

THC submitted a bid/offer, dated April 11, 1996, based on the requirements of the authorized solicitation. (*Id.* Ex. D.) As required by the terms of the solicitation, within ten days of the submission of THC's bid, Epstein and Gordy accepted the terms of THC's bid as offered and Palmer notified THC that they had so accepted. (Palmer Aff. 5.) Based on this acceptance,

THC began work on the Epstein residence, i.e., demolition began the day after Memorial Day weekend. (Epstein Dep. At 12.)

Epstein and Gordy assert there is no evidence that Palmer had authority to bind them to a contract. I find, however, while Palmer was authorized to solicit the bid, Epstein and Gordy themselves accepted the bid and Palmer communicated the acceptance to THC. Based on the acceptance, THC began working on the Epstein residence.

 Contrary to Epstein and Gordy's assertions, the facts indicate a contract was formed when Epstein accepted the bid/offer of THC. "[A] request for bids is nothing more than a request to receive offers.... The corollary to the rule regarding invitations to bid is that once an offeror submits a bid, its acceptance creates a contract." Howard O. Hunter *Modern Law of Contracts* § 3:18–19 (Warren Gorham Lamont 1993). Epstein authorized Palmer to solicit a bid on his behalf. Acting in accordance with this authority, Palmer sent out his standard bid package, which expressly provided that AIA document A201, General Conditions of the contract for Construction, 1987 Edition, was to be made a part of the conditions of the contract. Those General Conditions included an arbitration provision and the required proposal form to be completed by the bidder stated, if the bidder was notified of the proposal acceptance within ten days of the date of the bid, the bidder agreed to execute a contract in the form of the AIA Standard Owner–Contractor Agreement. That AIA form incorporates the A201 General Conditions.

Epstein told Palmer to accept the bid/offer, without attempting to modify any of the terms contained in the bid. The assertion of Gordy and Epstein that there is no evidence that either knew of the arbitration provision is to no avail. They had authorized Palmer to solicit the bid/offer. Through Palmer, they then communicated their unqualified acceptance of that bid/offer. The resultant contract consisted of the terms contained in the offer, including the terms relating to arbitration. Even if Epstein later raised an objection regarding the arbitration provision as an issue with Habermann, there was nevertheless no change in the terms of the agreement as there is no evidence that Habermann agreed to modify the arbitration provision.

Based on the facts in the record and the applicable law, I conclude the course of conduct of the parties established an agreement on the AIA contract, including the arbitration provision.

### B. *A written arbitration agreement does not have to be signed to be enforceable.*

 Without citing any authority, Plaintiffs object to the magistrate judge's conclusion that an arbitration agreement need not be signed under the Uniform Arbitration Act or the Federal Arbitration Act. This objection is unsupported. While both acts require that the terms of an arbitration agreement be in writing, neither requires that the agreement be signed by either party. *See* 9 U.S.C. §§ 2, 3; Colo. Rev.Stat. 13–22–203 (1998); *Medical Development Corp. v. Industrial Molding Corp.*, 479 F.2d 345, 348 (10th Cir.1973) (finding that under the Federal Arbitration Act and similar state statute, all that was required was that the arbitration provision be in writing, it was not necessary that it be signed); *Ehresman v. Bultynck & Co., P.C.*, 203 Mich.App. 350, 511 N.W.2d 724, 725 (1994) (finding an unsigned arbitration agreement binding where it was accepted and acted upon because the statute contained no language specifically requiring the written agreement to be signed by either party). *Landmark Properties, Inc. v. Architects International–Chicago*, 172 Ill.App.3d 379, 122 Ill.Dec. 344, 526 N.E.2d 603, 606 (Ill.Ct. App.1988) (finding that by the course of their conduct the parties entered into the AIA form of contract, including the arbi-

tration agreement).[3] I concluded the written arbitration agreement is enforceable notwithstanding that it was not signed by either party.

### C. *THC had not waived its rights to demand arbitration.*

■ Epstein and Gordy assert the magistrate judge incorrectly concluded THC did not waive or abandon any contractual right to arbitrate this dispute when it filed suit and asked courts to adjudicate this matter without making any demand for arbitration. "[A]rbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage." *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 13 F.3d 330, 332 (10th Cir.1993). The Tenth Circuit has identified six factors relevant to a determination of whether a party has waived its right to enforce an arbitration agreement:

"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."

*McWilliams v. Logicon, Inc.,* 143 F.3d 573, 576 (10th Cir.1998) (quoting Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th Cir.1994)).

**3.** Epstein and Gordy's position that the cases cited concerned industry practices in the highly regulated securities industry as opposed to the less regulated construction industry is unavailing. *See, e.g., City and Coun-*

■ Here, THC filed its action in state court on or about May 28, 1998. On July 24, 1998, Defendants Epstein and Gordy removed the case to Federal Court and, on that day, filed an answer and counterclaim. On August 13, 1999 THC filed an answer the counterclaim, and, simultaneously, the initial motion to compel arbitration and stay proceedings. Applying the factors set out above, at the time THC first sought to compel arbitration, the litigation machinery had not been substantially invoked, nor was the trial date close or delayed, judicial discovery had not commenced, and the delay cannot be said to have caused significant prejudice, if any, to Defendants. I find THC did not waive its right to arbitration.

### D. *The Issue of Whether THC Failed to Comply with the Contractual Conditions Precedent to the Right to Arbitration Should be Decided by the Arbitrator.*

Epstein and Gordy maintain the magistrate judge incorrectly found that the issue of whether THC has no contractual right to arbitration as it failed to comply with the contractual conditions precedent to such right, is one to be decided by the arbitrator, rather than the court. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions [such as questions concerning the procedural prerequisites to arbitration] which grow out of the dispute and bear on its final disposition should be left to the arbitrator.")

■ Relying on *Kennecott Copper Corp. Utah Copper Div. v. International Brotherhood of Electrical Workers Union,* 339 F.2d 343 (10th Cir.1964), Defendants ar-

*ty of Denver v. District Court,* 939 P.2d 1353, 1361 (Colo.1997) (explaining that alternative dispute resolution (ADR) clauses in construction typically provide for arbitration).

gue, where there has been admitted noncompliance with contractual preconditions to arbitration, the issue of waiver or forfeiture of arbitration is for the court, not the arbitrator, to decide. In *Kennecott*, the employer expressly acknowledged that its lack of a timely response to the union's grievance amounted to a procedural default and the default eliminated its right to arbitrate the merits of the grievance. Here, however, THC denies it committed procedural default in respect of the procedure identified by Epstein and Gordy, requiring the architect to determine the claim in the first instance. To the contrary, THC asserts Palmer, the architect of the project, offered to mediate this dispute and THC agreed, but Epstein refused. In these circumstances, following *John Wiley & Sons*, questions concerning the procedural prerequisites to arbitration are to be left to the arbitrator.

### III. *MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS LASALLE BANK, FSB AND LONG ISLAND SAVINGS BANK, FSB.*

■ Pursuant to Rule 55(b)(2), once the clerk has entered a default as described in Rule 55(a), "the party entitled to a judgment by default shall apply to the court therefor." The determination of whether to enter judgment by default is left to the discretion of the court. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970).

THC entered into a contract with Epstein and Gordy in terms whereof THC was to supply labor, materials, supplies and goods for improvements to the real property of Epstein and Gordy known as Lot 56, Block 2, Mountain Valley Subdivision, Pitkin County, Colorado ("Subject Real Property"). THC claims it has completed all the work required under the contract but Epstein and Gordy have failed to pay the full amount due and owing to THC. THC caused its Notice of Intent to File Lien Statement to be served on Ep-

stein and Gordy and, more than ten days thereafter, caused its mechanic's lien to be timely recorded. Therefore, THC has perfected its mechanic's lien on the Subject Real Property and improvements.

Under Colo.Rev.Stat. § 38–22–106 (1998), THC's lien relates back to January, 1995 when the first contractor, Warren Palmer began work on the Subject Real Property. Long Island Bank's lien on the Subject Real Property was not perfected until November 14, 1995 and Lasalle Bank's lien was not perfected until July 16, 1997. Accordingly, under § 38–22–106, THC's lien has priority over both Long Island Bank's lien and Lasalle Bank's lien.

As a result of their defaults, I enter default judgment against Lasalle Bank and Long Island Bank in the terms stated in the order below.

For the aforesaid reasons,

IT IS ORDERED AND DECLARED THAT default judgment is entered against Lasalle Bank and Long Island Bank as follows:

a. THC's mechanic's lien is senior to Lasalle Bank's Deed of Trust and to Long Island Bank's Deed of Trust and is superior and paramount to any claim against the property which either Lasalle Bank or Long Island Bank may have;

b. THC's mechanic's lien is perfected as against Lasalle Bank and Long Island Bank;

c. Costs in the amount of $69.80, associated with THC's action against Lasalle Bank, are awarded to THC and against Lasalle Bank;

d. Costs in the amount of $69.80, associated with THC's action against Long Island Bank, are awarded to THC and against Long Island Bank.

IT IS FURTHER ORDERED THAT the magistrate judge's recommendation is ADOPTED and Plaintiff's Amended Mo-

tion to Compel Arbitration and Stay these Proceedings is GRANTED.