NORTH CENTRAL CONSTRUCTION, INC., Plaintiff,

v.

SIOUXLAND ENERGY & LIVESTOCK COOPERATIVE, Defendant.

No. C02–4041–MWB.

United States District Court, N.D. Iowa, Western Division.

Nov. 12, 2002.

James R. Quilty, Crawford Law Firm,
Des Moines, IA, for Defendant.

Jeffrey L. Poulson, Corbett, Anderson,
Corbett, Poulson, Flom & Vellinga, Sioux
City, IA, Patrick J. Lee-O'Halloran, Fa-
byanske, Svoboda, Westra & Hart, Minne-
apolis, MN, for Plaintiff.

## MEMORANDUM OPINION AND OR-DER REGARDING PLAINTIFF'S MOTION TO COMPEL ARBITRA-TION AND STAY PROCEEDINGS PENDING ARBITRATION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND ........................960
    A. The Parties, The Arbitration Clauses, And The Underlying Disputes .....960
    B. Procedural Background ...............................................961

II. LEGAL ANALYSIS .........................................................962
    A. North Central's Motion to Compel Arbitration and Stay Proceedings .....962
    B. Waiver ................................................................963
        1. Inconsistent action ...............................................964
        2. Prejudice ........................................................966
    C. Conclusion ...........................................................969

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

### A. The Parties, The Arbitration Clauses, And The Underlying Disputes

The plaintiff North Central Construction, Inc. ("North Central"), is a North Dakota corporation maintaining its principal place of business in Fargo, North Dakota. Def.'s Answer and Counterclaim, at Ex. A. The defendant Siouxland Energy and Livestock Cooperative ("Siouxland"), is a cooperative organized under the laws of the state of Iowa and maintains its principal place of business in Sioux Center, Iowa. Def.'s Answer and Counterclaim. North Central is engaged in the construction business and subsequently entered into a written contract on December 28, 2000 with Siouxland to build the Siouxland Ethanol Facility ("The Facility") in Sioux Center, Iowa. Pl.'s Reply to Def.'s Answer and Counterclaim, at (# 6). In return for North Central's construction of the Ethanol Facility, Siouxland agreed to compensate North Central in the amount of $7,648,000. Def.'s Answer and Counterclaim, at Ex. A.

Several documents comprise the written contract between the parties. In particular, the parties direct the court's attention to the document entitled the "General Conditions of the Construction Contract" identified as Construction Management Association of America (CMAA) Document A–3. Def.'s Answer and Counterclaim, at Ex. A. According to Article 14.1.1 of the General Conditions, North Central and Siouxland were to initially address any unresolved disputes arising out of or relating to the contract through mediation in Des Moines, Iowa, before instituting against the other party a demand for arbitration "unless delay in initiating or prosecuting a proceeding in an arbitration or judicial forum would prejudice the Owner or Contractor." Def.'s Answer and Counterclaim, at Ex. A, 57. Further, Article 14.1.2 provides that "All unresolved disputes relating to this Contract or the

breach thereof ("disputes") shall be decided by arbitration in Des Moines, Iowa." Additionally, the contract grants the owner and contractor with the power to select an arbitrator(s) and to determine the rules and procedures that will govern the arbitration. However, if the owner and contractor are unable to reach an agreement regarding the format of the arbitration, the contract identified the American Arbitration Association as the association providing the then current "Construction Industry Rules" to govern the arbitration proceeding. Def.'s Answer and Counterclaim, at Ex. A, 58.

Disputes regarding the performance of the contract apparently erupted causing North Central to file a mechanic's lien, which it perfected on May 6, 2002 by filing an amended mechanic's lien.

### B. Procedural Background

On May 17, 2002 North Central filed a petition in Iowa District Court to foreclose its perfected mechanic's lien in the amount of $2,708,293. In its petition, North Central alleged that it "performed all labor and furnished materials as provided in the contract," both having been actually used in the construction of The Facility. Pl.'s Pet., at 1. Furthermore, North Central's petition asserted that it had performed all of the conditions of the contract within the specified time. Pl.'s Pet., at 1. In response to North Central's attempt to foreclose on its mechanic's lien, Siouxland filed a Notice of Removal on June 12, 2002 and the case was subsequently assigned to Chief Judge Mark Bennett, United States District Court for the Northern District of Iowa (# 4). In its notice of removal, Siouxland admitted that aside from North Central's filing its petition, no further proceedings took place in Iowa District Court.

On June 14, 2002, Siouxland answered North Central's petition and counterclaimed against North Central, alleging in Count I that North Central failed to perform its obligations under the contract and was in breach. Consequently, Siouxland seeks compensatory damages for the costs of design alterations it undertook, as well as for repairs and replacement costs it incurred to cure North Central's defective work and equipment. In addition, Siouxland seeks consequential and incidental damages and requests that punitive damages be awarded.

Instead of moving to compel arbitration and stay proceedings, on June 24, 2002 North Central answered Siouxland's counterclaim but failed to assert affirmative defenses. However, on July 10, 2002 North Central amended its answer to include six affirmative defenses, the first of which alleged that Siouxland's counterclaim for breach is governed by the arbitration agreement between the parties. Pl.'s Am. Reply to Counterclaim, at 2. According to the record, Siouxland next filed a motion to consolidate the present action and Siouxland's lawsuit against Michael Gaylor and Gaylor Engineering, No. 02–4033, filed on August 19, 2002. North Central filed its resistance to Siouxland's motion on September 5, 2002. However, Siouxland's motion to consolidate is not presently before the court, thus the court will not address its merits.

Alongside filing its resistance to Siouxland's motion to consolidate, North Central filed a motion to compel arbitration and stay proceedings. North Central maintains that under the agreement, Siouxland is precluded from pursuing its claim in court and must instead submit its claim to arbitration. North Central asserts that the Federal Arbitration Act ("FAA") applies to this action and requests that this court stay proceedings pursuant to 9 U.S.C. §§ 3–4, which state in pertinent part that "[a] party aggrieved by the alleged failure of another to arbitrate under

a written agreement for arbitration may petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement ...," 9 U.S.C. § 4, and that a court "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under [an] agreement [between the parties], shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Siouxland filed its resistance to North Central's motion on September 26, 2002. In support of its resistance, Siouxland advances that North Central acted inconsistently with its right to arbitrate when North Central filed a lawsuit in Iowa District Court to foreclose its mechanic's lien. As a result, Siouxland argues it was prejudiced because it had to "expend considerable effort and expense in participating in the litigation process NCC initiated." Def.'s Resistance to Pl.'s Mot. to Compel Arbitration and Stay Proceedings, at 7. Therefore, it is Siouxland's contention that North Central has waived its right to arbitrate any disputes arising out of or relating to the contract.

On October 3, 2002, North Central filed its reply to Siouxland's resistance. North Central maintains that it did not waive its right to arbitration when it filed a lawsuit to foreclose its mechanic's lien, and instead argues that such action was necessary to preserve North Central's statutory lien rights. North Central argues that Siouxland has not been prejudiced as a consequence and because all of Siouxland's disputes fall within the purview of the arbitration clause, this court should stay proceedings and compel arbitration.

North Central timely requested oral argument on the motion to stay proceedings and compel arbitration. The court granted that request and held oral arguments

on North Central's motion on November 7, 2002. At the hearing, plaintiff North Central was represented by Jeffrey Poulson of Corbett, Anderson, Corbett, Poulson, Vellinga & Buckmeier of Sioux City, Iowa, and Patrick Lee–O'Halloran of Fabyanske, Westra & Hart of Minneapolis, Minnesota. Defendant Siouxland was represented by Jim Quilty of the Crawford Law Firm of Des Moines, Iowa. North Central's motion to stay proceedings and compel arbitration is now fully submitted.

## II. LEGAL ANALYSIS

### A. North Central's Motion to Compel Arbitration and Stay Proceedings

Congress enacted the FAA, 9 U.S.C. §§ 1–16 (1994), " 'to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.' " *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 679 (8th Cir. 2001) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). It follows then that the court apply ordinary contract principles to determine whether North Central and Siouxland agreed to arbitrate. *ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc.*, 133 F.3d 664, 668 (8th Cir.1998) ("we examine arbitration agreements in the same light as any other contractual agreement"); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir.1997) (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir.1994) ("Under the FAA, ordinary contract principles govern whether parties have agreed to arbitrate.")). However, state contract law guides the court's analysis when considering the validity of an arbitration agreement. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir.2001); *Keymer v. Management Recruiters Intern., Inc.*, 169 F.3d

501, 504 (8th Cir.1999) ("We apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter.") (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) and *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir.1998)).

Therefore, the court must first establish what law controls the interpretation of this arbitration agreement. Article 15 of the General Conditions of the construction contract identifies the governing law: "The Contract and the Contract Documents shall, unless otherwise provided in the Contract Documents, be governed by the law of the state where the Project is located." Def.'s Answer and Counterclaim, at Ex. A, 58–59. In order to demarcate whether the general conditions are considered "contract documents," the court looks to Article 1.1.6 of the General Conditions which defines "contract documents" to include "these General Conditions and any supplementary conditions furnished to the Contractor." Def.'s Answer and Counterclaim, at Ex. A, 4. In turn, Article 1.1.4 specifies that The Facility is to be constructed "on certain premises located in Sioux Center, Iowa." Furthermore, Article 14.1.2 of the General Conditions includes a provision that "The agreement to arbitrate, and any other agreement or consent to arbitrate entered into in accordance herewith shall be specifically enforceable under the prevailing law of any court having jurisdiction." Def.'s Answer and Counterclaim, at Ex. A, 57–58. Based on this language in the parties' contract documents, the court must look to Iowa law to adjudge whether North Central's and Siouxland's agreement to arbitrate is valid. *Barker*, 154 F.3d at 791.

The court employs a two-part inquiry to determine "simply whether the parties have entered a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement." *Gannon*, 262 F.3d at 680 (citing *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir.2001)); *Keymer*, 169 F.3d at 504. Only if the court concludes that North Central and Siouxland have reached such an agreement, may the court order the parties to proceed with arbitration. *See Owen v. MBPXL Corp.*, 173 F.Supp.2d 905, 912 (N.D.Iowa 2001). The parties do not dispute that the present action is governed by the FAA and that their contract contains a valid arbitration agreement. Thus, the court will assume, without deciding, that the contract between North Central and Siouxland creates a valid agreement to arbitrate that is governed by the FAA. Instead, North Central's and Siouxland's dispute appears to concern whether their claims fall within the scope of the valid arbitration agreement. Specifically, Siouxland contends that the claims are not arbitrable because North Central waived any right to arbitration when it initiated a lawsuit in Iowa District Court to foreclose its mechanic's lien. Def.'s Resistance, at 5.

### B. Waiver

The court agrees with North Central's argument that the law favors arbitration. Pl.'s Br., at 9; *See Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir.2001) ("The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., declares a " 'liberal federal policy favoring arbitration agreements.' " ") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see also Hoffman v. Cargill Incorp.*, 236 F.3d 458, 461 (8th Cir.2001) ("The FAA compels courts to be solicitous of both the arbitration process and its results."). In fact, the Eighth Circuit Court of Appeals has found that " 'there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular

grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"" *Lyster*, 239 F.3d at 945 (quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citations omitted)). Recently, the Eighth Circuit Court of Appeals noted that when addressing an allegation of waiver in the context of the arbitrability of a dispute, it does so "against the backdrop that '[i]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration.'" *Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 886 (8th Cir.2001) (quoting *Ritzel Communications v. Mid–American Cellular*, 989 F.2d 966, 968–69 (8th Cir.1993)). When a party makes an accusation of waiver, it is essentially contending that the claim is not within the scope of the parties' valid arbitration agreement. That is, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Lyster*, 239 F.3d at 945 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S.Ct. 927) and (citing *Barker*, 154 F.3d at 793) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues [such as an allegation of waiver] should be resolved in favor of arbitration. . . .").

The court will find a waiver of arbitrability by the party claiming a right to arbitrate where that party "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Dumont*, 258 F.3d at 886 (quoting *Ritzel Communications*, 989 F.2d at 968–69) (citing *Stifel, Nicolaus & Co. v. Free-*

*man*, 924 F.2d 157, 158 (8th Cir.1991)); *Barker*, 154 F.3d at 794. Here, North Central does not dispute that it knew of its right to compel Siouxland to arbitrate any claims arising out of or relating to the contract. Rather, the contest between the parties concerns the last two prongs of the test.

## 1. Inconsistent action

■ With regard to the second prong, North Central argues that it did not act inconsistent with its right to arbitration when it elected to commence a lawsuit in Iowa District Court to foreclose on its mechanic's lien. Instead, North Central asserts it was merely preserving its mechanic's lien rights. Pl.'s Br., at 17. The lack of guidance in the Eighth Circuit Court of Appeals's precedent regarding what constitutes inconsistent action for purposes of waiver causes the court to look to decisions from other Circuit Courts of Appeals for guidance. The case law is not dispositive on the issue of waiver in the context of mechanic's liens, but it is instructive on what may amount to inconsistent action on the part of the party asserting a right to compel arbitration and prejudice to the party opposing arbitration.

In *Cabinetree of Wisconsin Incorp. v. Kraftmaid Cabinetry, Incorp.*, 50 F.3d 388, 389 (7th Cir.1995), the plaintiff filed a lawsuit in Wisconsin state court alleging various state law violations, which the defendant later removed to federal district court. *Id.* Discovery commenced and a trial date was set. *Id.* Approximately eleven months, and some two-thousand discovered documents later, the defendant moved the district court to stay proceedings and compel arbitration under 9 U.S.C. § 3. *Id.* The Seventh Circuit Court of Appeals held that "an election to proceed before a nonarbitral tribunal for the reso-

lution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Id.* at 390. However, the court went on to acknowledge that not every instance in which a party invokes the judicial process does the party intend "to proceed in a court to the exclusion of arbitration." *Id.* at 391; *see Iowa Grain Co. v. Brown,* 171 F.3d 504, 509 (7th Cir.1999) (reiterating that invocation of judicial process merely creates a presumption and "not an invariable rule"). The court recognized that "a variety of circumstances may make the case abnormal, and then the district court should find no waiver or should permit a previous waiver to be rescinded." *Id.; see Iowa Grain Co.,* 171 F.3d at 509–10 (restating that court has the ability to find an initial waiver, but "permit that waiver to be rescinded, depending on the course the litigation takes"). Still, the court in *Cabinetree* found that there was a waiver without justification on the part of the defendant for the delay in filing the stay. *Id.*

Similarly, the Fifth Circuit Court of Appeals has found that a party waives its right to arbitration when it " 'initially pursues litigation and then reverses course and attempts to arbitrate....' " *Gulf Guaranty Life Ins. Co. v. Connecticut General Life Ins. Co.,* 304 F.3d 476, 483–85 (5th Cir.2002) (quoting *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.,* 243 F.3d at 906, 911 (5th Cir.2001)). The Fifth Circuit Court of Appeals clarified what it meant by 'pursuing' or 'invoking' the judicial process in *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 329 (5th Cir.1999).

We use the term to describe the act of implementing or enforcing the judicial process, not the act of calling upon for support or assistance, as say, one would invoke a spirit or the elements. Thus, to invoke the judicial process, the waiving party must do more than call upon unrelated litigation to delay an arbitration proceeding. The party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.

*Id.*

The court's preceding analysis, although based on the FAA, is the same under Iowa law. *Campbell v. AG Finder Iowa Nebraska,* No. 00–1630, 2002 WL 576160, at *2 (Iowa Ct.App. Feb.20, 2002). Because North Central filed its mechanic's lien in Iowa District Court, the court will examine the relevant Iowa statutes and case law construing the same.

Under Iowa law, a principal contractor or subcontractor must file a verified statement of account "within ninety days from the date on which the last of the material was furnished or the last of the labor was performed" in order to preserve its mechanic's lien rights and thereby perfect a mechanic's lien. IOWA CODE ANN. §§ 572.8 to.9 (West 1992). Thus, when North Central perfected its mechanic's lien on May 6, 2002 it had effectively preserved its mechanic's lien rights. However, of particular significance to the court in the present action is Iowa Code section 572.27 which allows North Central up to two years to institute a proceeding to foreclose on its mechanic's lien after the expiration of the ninety days in which it had to perfect its lien. IOWA CODE ANN. § 572.27 (West 1992). Although North Central argues that it filed suit in Iowa District Court merely to preserve its mechanic's lien rights, in light of Iowa Code section 572.27, and in the court's view, what North Central fails to distinguish is the filing of its perfected mechanic's lien in order to preserve its rights, and its bringing an action to foreclose on that mechanic's lien in Iowa District Court. Under the circumstances, the court turns to existing Iowa case law to assess both North Central's filing of its perfected mechanic's lien and its foreclo-

sure action to determine whether either could be considered an action with respect to the merits of the case prior to arbitration. *See Dumont,* 258 F.3d at 886.

In *Clinton National Bank v. Kirk Gross Co.,* 559 N.W.2d 282, 284 (1997), the Iowa Supreme Court found that "a lien claimant's mere filing of a statement of account, as the first step in perfecting a mechanic's lien," set forth in Iowa Code section 572.8, "is no more 'court action' than is the filing of a mortgage." The parties in *Clinton National Bank* entered into a contract to remodel a bank and drafted an arbitration clause in the contract to cover all disputes between the parties arising from the contract. *Id.* at 283. Subsequently, a dispute arose over the quality of the carpet installed by the defendant and the defendant filed a mechanic's lien when the plaintiff refused to pay the remaining balance on the contract. *Id.* The court in *Clinton National Bank,* rejected the plaintiff's assertion that the defendant waived its right to arbitration when it filed its mechanic's lien. *Id.; see Modern Piping Inc. v. Blackhawk Automatic Sprinklers, Inc.,* 581 N.W.2d 616, 621 (Iowa 1998) (stating "mere filing of a mechanic's lien did not constitute court action, and therefore did not establish waiver of the right to arbitration") (reversed on other grounds).

However, the issue of whether a lawsuit to foreclose on a mechanic's lien is an action with respect to the merits of the case, and thereby sufficient court action to amount to a waiver, "remains an open question under Iowa law." Roger Stone, *Mechanic's Liens in Iowa—Revisited,* 49 Drake L.Rev. 1, 36 (2000). The question was not squarely before the court in *Clinton National Bank,* but the court did state in reference to the filing of a statement of account to perfect a mechanic's lien and the filing of a mortgage that "in both cases a foreclosure action is required to constitute court action." *Clinton Nat'l Bank,*

559 N.W.2d at 284. Similarly, in *Modern Piping Inc.,* the Iowa Supreme Court found that the plaintiff's filing of a petition in Iowa District Court alleging breach of the indemnity and warranty provisions of the parties' contract was "inconsistent with asserting a right to arbitration." *Modern Piping, Inc.,* 581 N.W.2d at 621.

It is clear from the record that North Central elected to invoke the judicial process when it sought to foreclose its mechanic's lien in Iowa District Court. Had North Central desired merely to preserve its mechanic's lien rights, it could have done so by simply filing a statement of account in accord with Iowa Code section 572.8. Instead, by instituting a foreclosure action, North Central essentially petitioned the Iowa District Court to enforce its rights under its perfected mechanic's lien. Such a request is nothing less than an adjudication on the merits of the parties' disputes concerning whether both parties performed according to the terms and conditions of the contract entitling North Central to payment. Therefore, the court concludes that North Central acted inconsistent with its right to arbitration when it filed suit in Iowa District Court seeking to foreclose on its mechanic's lien.

### 2. *Prejudice*

█ With regard to the third prong of the test, the Eighth Circuit Court of Appeals has stated that "Whether inconsistent actions constitute prejudice is determined on a case-by-case basis." *Stifel, Nicolaus & Co.,* 924 F.2d at 159 (citing *Prudential–Bache Sec. v. Stevenson,* 706 F.Supp. 533, 536 (S.D.Tex.1989)); *see also Thyssen, Inc. v. Calypso Shipping Corp.,* 310 F.3d 102, 104–05 (2d Cir.2002) (declaring waiver inquiry " 'is factually specific and not susceptible to bright line rules' ") (quoting *Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993)). For instance, "Prejudice

may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." *Stifel, Nicolaus & Co.,* 924 F.2d at 159 (citing *Prudential–Bache Sec.,* 706 F.Supp. at 535 and *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985)). Yet, the Eighth Circuit Court of Appeals is in agreement with other circuit courts of appeals that delay by the party seeking to compel arbitration "does not itself constitute prejudice." *Stifel, Nicolaus & Co.,* 924 F.2d at 159 (citing *Rush,* 779 F.2d at 887); *see also Gulf Guaranty Life Ins. Co.,* 304 F.3d at 483–85) (confirming that "mere delay falls far short of the waiver requirements") (quoting *Subway,* 169 F.3d at 326)). The Second Circuit Court of Appeals's only caveat to this precept is that the delay in judicial proceedings not be accompanied by "substantial motion practice or discovery." *Thyssen,* 310 F.3d at 105. However, the court in *Thyssen* proceeded to cite cases in which the court declined to find a waiver even though the party seeking to compel arbitration delayed in making its request for as many as three years. *Id.* (citing *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 122 (2d Cir.1991)). In any event, a demonstration of prejudice appears to be key to finding a waiver. *See Thyssen, Inc.,* 310 F.3d at 104–05 (quoting *Rush,* 779 F.2d at 887).

Moreover, the requirement that the party opposing arbitration demonstrate prejudice imposes a heavy burden on Siouxland, especially in light of the fact that early in the litigation North Central asserted arbitration as an affirmative defense, albeit in an amended answer. Pl.'s Am. Reply to Counterclaim, at 2. *See Nesslage v. York Securities, Inc.,* 823 F.2d 231, 234 (8th Cir.1987) (citing *Martin Marietta Aluminum, Inc. v. General Electric Co.,* 586 F.2d 143, 146 (9th Cir.1978)); *N & D Fashions, Inc. v. DHJ Indus., Inc.,* 548 F.2d 722, 728 (8th Cir.1976). The court notes, in re-

sponse to Siouxland's contention that North Central's failure to assert arbitration as an affirmative defense in its initial answer should serve as evidence of waiver, that " 'Absent a demonstration of prejudice . . ., the bare fact that the defendants filed an answer is inadequate by itself to support a claim of waiver of arbitration.' " *Thyssen,* 310 F.3d at 105 (quoting *Rush,* 779 F.2d at 889). There does not appear to be a *per se* rule that a party seeking to elect arbitration to resolve a dispute assert it as an affirmative defense and even if that were the case, North Central timely filed an amended answer asserting arbitration as an affirmative defense. *Id.*

Additionally, in an effort to establish prejudice, Siouxland argues that it incurred duplicative expenses and "expended effort that will need to be replicated in any arbitration." Def.'s Br., at 8. In *Stifel, Nicolaus & Co.,* 924 F.2d at 158, the plaintiff brought a diversity suit to recover outstanding debit balances in its customers' accounts. *Id.* The defendants responded by filing an amended counterclaim to which the plaintiffs answered without asserting arbitration as an affirmative defense. *Id.* The parties conducted written discovery and almost seven months later, plaintiffs moved the district court to compel arbitration. *Id.* The district court granted plaintiffs motion and the Eighth Circuit Court of Appeals affirmed finding that the plaintiff's initiating litigation and then waiting to move the court to compel arbitration until three months after the defendants filed their amended complaint did not prejudice the defendants. *Id.* at 887–89; *but see Ritzel Communications, Inc.,* 989 F.2d at 971 (finding substantial prejudice where party seeking arbitration fully tried its case in a six-day bench trial and failed to raise arbitration issue before court in a motion to expedite appeal or to stay proceedings in the district court). Furthermore, the court determined that the discovery which had been conducted

could be used in the arbitration proceedings. *Id.* at 158.

Likewise, in *Todd Habermann Constr., Inc. v. Epstein,* 70 F.Supp.2d 1170, 1175 (D.Colo.1999), the District Court of Colorado did not find that the plaintiff's actions caused significant prejudice to the defendants despite the plaintiff invoking the judicial process. The plaintiff initiated a lawsuit in state court which defendants removed to federal court, where defendants subsequently filed an answer and counterclaim. *Id.* In response, the plaintiff filed an answer, counterclaim and motion to compel arbitration and stay proceedings. *Id.* In reaching its conclusion, the court reasoned that "the litigation machinery had not been substantially invoked, nor was the trial date close or delayed, judicial discovery had not commenced, and the delay cannot be said to have caused significant prejudice, if any, to Defendants." *Id.*

Although North Central invoked the judicial process and there was some pretrial litigation activity, primarily pleadings, no issues have been litigated and no discovery has been conducted in the instant case. *Thyssen,* 310 F.3d at 105–06 (declining to find waiver after plaintiff moved for partial summary judgment and defendant resisted before filing cross-motion to stay proceedings and compel arbitration pursuant to FAA). Applying the factors the courts in *Stifel* and *Todd Habermann* relied on to the instant case, coupled with the fact that there has been no litigation of substantial issues going to the merits nor discovery

undertaken, the court finds that Siouxland has not incurred such excessive costs as to constitute prejudice. *Compare id.* (declining to find excessive costs where no evidence of extensive discovery or substantive motions by party asserting right to arbitration), *with WorldSource Coil Coating, Inc. v. McGraw Constr. Co., Inc.,* 946 F.2d 473, 478–79 n. 7 (6th Cir.1991) (stating, without finding, plaintiffs likely suffered prejudice in form of duplicative expenses incurred when plaintiff filed answer, court held hearing on defendant's request for preliminary injunction, plaintiff filed counterclaims, and defendant moved and was granted dismissal).

As to Siouxland's allegation that North Central engaged in forum shopping, even if North Central engaged in a limited form of forum shopping by seeking enforcement of its mechanic's lien and delaying filing of its motion to stay proceedings and compel arbitration until after Siouxland filed its motion to consolidate, as the Seventh Circuit Court of Appeals recognized in *Cabinetree,* "not every invocation of the judicial process signifies an intent to proceed in court to the exclusion of arbitration." *Benjamin–Coleman v. Praxair, Inc.,* 216 F.Supp.2d 750, 753 (N.D.Ill.2002) (quoting *Cabinetree of Wisconsin Incorp.,* 50 F.3d at 390–91). The court in *Cabinetree* announced that "In such a case prejudice to the other party, the party resisting arbitration, should weigh heavily in the decision whether to send the case to arbitration, as should the diligence or lack thereof of the party seeking arbitration." *Cabinetree of Wisconsin Incorp.,* 50 F.3d at 391.[1]

---

1. The Seventh Circuit Court of Appeals clarified in *Cabinetree of Wisconsin Incorp.,* 50 F.3d at 391, that it only requires this heightened finding of prejudice where "a variety of circumstances may make the case abnormal." In all other instances, the court believes itself to espouse the minority position by not insisting on evidence of prejudice "beyond what is inherent in an effort to change forums in the middle (and it needn't be the exact middle) of

a litigation." *Id.* at 390. Likewise, this court is persuaded that a party should not be required to set forth evidence of prejudice in light of an opposing party's efforts to change forums midstream and is convinced that this same position maintained by the Seventh Circuit Court of Appeals constitutes better policy. However, this court is bound by Eighth Circuit Court of Appeals's precedent which re-

Thus, despite the fact that North Central could have, and in the court's view should have, proceeded to arbitration before it sought to foreclose on its mechanic's lien, the delay caused was minimal seeing as North Central filed suit in May 2002 and asserted its right to arbitration in July 2002. *See Benjamin–Coleman,* 216 F.Supp.2d at 753. Furthermore, North Central asserted its right to arbitration in its amended answer to Siouxland's counterclaim and since such time has not participated in further pretrial litigation activity. The court believes the Second Circuit Court of Appeals, in a similar action, summarized the court's present position best when it stated, " '[a]lthough granting defendants' demand for arbitration at this point may be sanctioning a less efficient means of resolving this dispute . . . neither efficiency nor judicial economy is the primary goal behind the arbitration act.' " *Id.* (quoting *Rush,* 779 F.2d at 891).

### C. Conclusion

In conclusion, the court finds that this lawsuit, arising from North Central's and Siouxland's dispute regarding the performance of the parties' contract to build the Siouxland Ethanol Facility in Sioux Center, Iowa, should be stayed and the dispute arbitrated according to Article 14 of the General Provisions of the parties' contract. Therefore, the motion of plaintiff North Central to stay pending arbitration is **granted.**

**IT IS SO ORDERED.**